UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MELISSA B. PETRINI,<br><br>    Plaintiff,<br><br>    v.<br><br>CAROLYN W. COLVIN,<br><br>    Defendant. | Case No. 14-cv-01583-JD<br><br>**ORDER RE MOTIONS FOR SUMMARY JUDGMENT**<br><br>Re: Dkt. Nos. 16, 19 |

Plaintiff Melissa B. Petrini challenges a decision by a Social Security Administration ("SSA") administrative law judge ("ALJ") that denied her disability benefits. Plaintiff and defendant have cross-moved for summary judgment seeking to overturn or affirm, respectively, the ALJ's decision. The Court has carefully considered the administrative record ("AR") and the parties' arguments and finds no reversible error in the ALJ's determinations. Consequently, plaintiff's motion is denied and defendant's motion is granted.

## BACKGROUND

In December 2010, Petrini filed an application for disability insurance benefits. AR 151-59. Petrini, a 31-year-old mother of four, claims disability since June 2009 for depression, anxiety, hallucinations, trouble concentrating, mood lability, irritability and discomfort around large groups of people. AR 169-70, 173, 216-17, 639. Petrini's treating physician diagnosed her with Bipolar Disorder II in 2010 and prescribed medications. AR 720, 725. Petrini reports that the medications stabilized her moods and decreased her anxiety without any side effects. AR 711.

In November 2011, Petrini requested a hearing on benefits eligibility before an ALJ. AR 96. Petrini's request was assigned to ALJ Maxine R. Benmour, an ALJ in the SSA's Office of Disability Adjudication and Review. AR 27, 29. On October 19, 2012, the ALJ held an

evidentiary hearing on Petrini's claim at which Petrini appeared and testified. AR 44-78. Rocko Mazenski, a vocational expert, also testified at the hearing. AR 72-77. On November 8, 2012, the ALJ issued a decision finding that plaintiff was not disabled. AR 30-38. Petrini appealed this adverse decision to the SSA Appeals Council, which declined to review it. AR 1-3. Petrini then filed this action pursuant to 42 U.S.C. 405(g), which authorizes review of final SSA decisions by a district court.

In the decision, the ALJ followed the five-step sequential evaluation process mandated for disability claims under 20 C.F.R. § 416.920 and found that the claimant is not disabled. Step one requires the ALJ to determine whether the claimant is working in a "substantial gainful activity." AR 31. This step counted in Petrini's favor because she had been unemployed since applying for benefits. AR 32. Step two directs the ALJ to determine whether the claimant has a severe impairment or combination of impairments that significantly limits the claimant's ability to work. AR 31. The ALJ found that Plaintiff satisfied this step because her bipolar disorder, anxiety disorder and opioid dependence more than minimally affect her ability to perform work related activities. AR 32.

The ALJ found against Petrini at step three. In this step, the ALJ determines whether the claimant's impairment meets, or is medically equal to, the criteria of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. § 404.1520(d)). "That bureaucratic mouthful means the ALJ must see if the claimant's impairment matches the criteria for disabling conditions listed in the regulations." *Presley v. Colvin*, No. 14-CV-01814-JD, 2015 WL 2379807, at *2 (N.D. Cal. May 18, 2015). Here, the ALJ focused on Listing 12.04, which addresses affective mental disorders, and concluded that Petrini did not manifest the level of difficulty or decompensation required to meet or medically equal the 12.04 criteria. AR 32-33. Specifically, the ALJ found that Petrini had moderate restrictions in social functioning and concentration, but only mild restrictions in activities of daily living. AR 32. Petrini cares for her young children and "had no problems with personal care, helped prepare meals, did cleaning and laundry, and did grocery shopping." *Id*. And although she has "some problems with interaction with others," she lives with her mother and sister, has lived with her younger children and husband in the past, and

"can talk to her family when she is taking her medications." AR 32-33. She "is able to do her [autistic] sister's makeup and hair" and follows written instructions well. AR 33. The ALJ also found that Petrini "has experienced no episodes of decompensation of extended duration." *Id*.

The ALJ proceeded to step four, which "entails an assessment of the claimant's 'residual functional capacity', another bureaucratic turn of phrase which basically means the claimant's ability to work even with some limitations or impairments." *Presley*, 2015 WL 2379807, at *2. The ALJ spent a considerable portion of the decision analyzing this issue. The ALJ found that, based on the evidence in the record, Petrini's impairments could reasonably be expected to cause the claimed symptoms. AR 34. But the ALJ also found that "the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible." *Id*. For example, Petrini reported to an examining physician that she used drugs only as a teenager, while the record reflects "a great deal of substance abuse." *Id*. And Petrini said she would stay in bed all day twice a week but described activities inconsistent with that claim, for example, that her medications allowed her "to get up and get dressed and be around people." *Id*. The ALJ found that Petrini has the residual functional capacity to perform a full range of work when limited to simple, repetitive tasks with occasional contact with supervisors, co-workers and the public. AR 33.

The ALJ then addressed step five, the final step. This step requires the ALJ to determine whether the claimant can do any substantial gainful activity in the national economy with her limitations. Relying on the testimony of a vocational expert, and "considering the claimant's age, education, work experience, and residual functional capacity," the ALJ concluded that there are a significant number of jobs in the national economy that Petrini can perform. AR 37-38 (citing 20 C.F.R. § 416.969 and 416.969(a)). These include, as examples, working as a hand packager, hospital housekeeper, or office helper. AR 37. With that finding, the ALJ declared Petrini "not disabled." AR 38.

# DISCUSSION

## I. LEGAL STANDARD

The Court's review of the ALJ's decision is guided by several well-established principles.

3

*Presley*, 2015 WL 2379807, at *3. The bedrock principle is that the Court does not do a de novo review of the disability claim. *Id.* Rather, the Court may set aside a denial of benefits only when it is "not supported by substantial evidence in the record or if it is based on legal error." *Merrill ex rel. Merrill v. Apfel*, 224 F.3d 1083, 1084–85 (9th Cir. 2000); *see also Tommasetti v. Astrue*, 533 F.3d 1035, 1038 (9th Cir. 2008) (same). "Substantial evidence is 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Tommasetti*, 533 F.3d at 1038 (internal citation omitted). That evidence "must be more than a mere scintilla but not necessarily a preponderance." *Id.* The Court may not simply supplant an ALJ's reasonable judgment with its own. "Where evidence exists to support more than one rational interpretation, the Court must defer to the decision of the ALJ." *Drouin v. Sullivan*, 966 F.2d 1255, 1258 (9th Cir. 1992).

The Court also defers to the ALJ's fact and credibility determinations. "Credibility questions, conflicts in the medical testimony, and all other ambiguities are resolved by the ALJ." *Presley*, 2015 WL 2379807, at *3 (citations and quotations omitted). But the Court is no mere rubber stamp when reviewing SSA decisions. *Id.* While subject to these principles of deference, it still is charged with reviewing the administrative record as a whole to ensure that substantial evidence does in fact support the ALJ's determinations. *Id.*

## II. THE ALJ'S TREATMENT OF MEDICAL OPINIONS

In the Ninth Circuit, courts "distinguish among the opinions of three types of physicians: (1) those who treat the claimant (treating physicians); (2) those who examine but do not treat the claimant (examining physicians); and (3) those who neither examine nor treat the claimant (nonexamining physicians)." *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995). The opinion of a treating physician is entitled to greater weight than that of an examining physician, and the opinion of an examining physician is entitled to greater weight than that of a non-examining physician. *Garrison v. Colvin*, 759 F.3d 995, 1012 (9th Cir. 2014). When a treating physician's opinion is not contradicted by another physician's opinion, it may be rejected only for "clear and convincing" reasons supported by "substantial evidence" in the record. *Orn v. Astrue*, 495 F.3d 625, 632 (9th Cir. 2007) (citations and quotations omitted). When a treating or examining

4

physician's opinion is contradicted by another physician's opinion, an ALJ may only reject it by providing "specific and legitimate reasons that are supported by substantial evidence in the record." *Lester*, 81 F.3d at 830-31.

Here, in making the disability determination, the ALJ relied on the state agency assessment conducted by consulting physician Dr. Harvey Bilik, an assessment conducted by examining physician Dr. Richard Palmer, and the record as a whole. Petrini contends that the ALJ should have placed greater weight on the medical opinions of her treating physician, Dr. Peter Rutter, and the opinions of Dr. Palmer and Dr. Les Kalman, a second examining physician. Dkt. No. 16.

### A.     Dr. Rutter

Petrini began receiving psychiatric medication management with psychiatrist Peter Rutter in July 2010, "over a year after her alleged onset date." AR 34. In December 2011, Dr. Rutter completed a mental impairment questionnaire, diagnosed Petrini with bipolar disorder, and assessed a GAF (Global Assessment of Functioning) score of 41 out of 100, which can indicate serious symptoms. AR 35; *see also* 720. The month before, during an office visit with Petrini in November 2011, Dr. Rutter opined that Petrini was "disabled" due to her "mood instability" but observed at the same time that she was appropriately dressed and groomed, well-organized, goal-oriented and free of any "evident cognitive disturbance." AR 35; *see also* AR 707, 709. Dr. Rutter's notes also indicate that Petrini expressed "mild mood lability and irritability but denied depression, suicidal or homicidal ideation, acting out, loss of impulse control, racing thoughts, excessive anger, grandiosity, and auditory or visual hallucinations" and said that she felt "more stable than the last visit." AR 35; *see also* 707. Her appetite was good and her insight and judgment were improving. AR 707. These fairly positive assessments echoed Dr. Rutter's observations from his first meeting with Petrini in July 2010. At that time, Dr. Rutter found that Petrini had a "very good memory," was "attentive," although her concentration was impaired, and had good eye contact and a pleasant and cooperative attitude. AR 742, 744.

The ALJ cited the disconnect between Dr. Rutter's disability opinion and the mild and benign symptoms expressed by Petrini to discount his conclusion. The ALJ found the opinion "is mostly inconsistent with the symptoms that [Dr. Rutter] observed in his treatment notes…and the

mild symptoms described by the claimant." AR 35. The ALJ also found that Dr. Rutter "had gone over the disability questionnaire with the claimant, which brings into question his ability to be completely objective." *Id*.

Petrini's main argument on appeal is that the ALJ was wrong to limit the force of Dr. Rutter's opinion. Specifically, Petrini argues that his disability opinion is entirely consistent with his treatment notes, and that the ALJ's finding of inconsistency mischaracterizes the record. Dkt. No. 16 at 12. But Petrini fails to point to any material fact errors or mischaracterizations in the ALJ's decision, and she basically ignores the evidence in the record that supports the ALJ's reason for discounting Dr. Rutter's opinion. As the record shows, Dr. Rutter's observations and Petrini's own statements about her condition are in tension with his disability opinion. This incongruity is a specific and legitimate reason for the ALJ to discount that opinion. *See Valentine v. Comm'r Soc. Sec. Admin.*, 574 F.3d 685, 692-93 (9th Cir. 2009); *see also Tommasetti*, 533 F.3d at 1041; *Nelson v. Astrue*, No. 08-2924 JF, 2009 WL 1699660, at *3 (N.D. Cal. June 17, 2009) (finding a treating physician's report that was contradicted by claimant's own statements to constitute a specific and legitimate reason for discounting the report).

The ALJ also discredited Dr. Rutter's opinion because he helped Petrini answer the disability questionnaire. AR 35. The Court doubts that is a valid reason to slight the opinions of a treating physician but the issue need not be formally addressed because the ALJ provided other credible reasons that are supported by law and by substantial evidence. Where, as here, the ALJ's reasons are supported by substantial evidence in the record, the Court defers to the ALJ's resolution of ambiguities and conflicts in Dr. Rutter's medical testimony, and her decision to give his opinion limited weight.

### B. Dr. Palmer

In April 2011, examining physician Dr. Richard Palmer conducted an independent psychological consultative evaluation of Petrini. Dr. Palmer diagnosed an anxiety disorder and major depressive order and assigned a GAF score of 55, indicating moderate symptoms. AR 662; *see also* AR 36. Dr. Palmer opined that the claimant could perform one or two-step simple, repetitive tasks as well as complex tasks, but that she had a poor ability to interact with coworkers

1      and the public. AR 662. The ALJ afforded partial weight to Dr. Palmer's evaluation because it

2      seemed generally consistent with the record as a whole. AR 36.

3            Plaintiff contends that the ALJ improperly incorporated some but not all of Dr. Palmer's

4      opinions into the residual functional capacity ("RFC") determination at step four. Dkt. No. 16 at

5      21. Specifically, Petrini argues that the ALJ failed to incorporate Dr. Palmer's opinions that the

6      plaintiff has a "fair ability" to (1) maintain regular attendance in the workplace, (2) complete a

7      normal workday or workweek, and (3) to handle normal work related stress. Dkt. No. 16 at 22

8      (citing AR 662-63). This contention is not well taken. The ALJ need not recount each of the

9      assessed limitations in order to have properly considered them. Rather, the ALJ may synthesize

10     and translate the assessed limitations into an RFC. *Stubbs-Danielson v. Astrue*, 539 F.3d 1169,

11     1174 (9th Cir. 2008). Here, the RFC limitations to simple, repetitive tasks with occasional contact

12     with supervisors, co-workers, and the public "'[bears] a logical nexus' to the physician's opinions

13     that the claimant was arguing had been omitted or rejected." *Hann v. Colvin,* No. 12-CV-06234-

14     JCS, 2014 WL 1382063, at *22 (N.D. Cal. Mar. 28, 2014) (citing *Gentry v. Colvin*, No. 1:12-CV-

15     01825-SKO, 2013 WL 6185170, at *16 (E.D. Cal. Nov. 26, 2013)). The ALJ properly concluded

16     that Petrini's "fair ability" to maintain regular hours and handle workplace stress would be

17     mitigated if she were limited to such simple, repetitive tasks involving only occasional social

18     interaction.

19     **C.     Dr. Kalman**

20           Dr. Kalman was an examining physician who met once with Petrini. Dr. Kalman made a

21     diagnosis of bipolar disorder (depressed), panic disorder, generalized anxiety disorder/social

22     phobia, and opioid abuse in remission. AR 732. He found a GAF score of 50, which indicates

23     serious symptoms, but also found that Petrini had a fairly normal mental status and average

24     intellectual functioning. AR 36, 731-32. The ALJ afforded limited weight to Dr. Kalman's

25     opinion, and plaintiff contends that this was improper. Dkt. No. 16 at 17-20.

26           The ALJ discounted Dr. Kalman's opinion because his evaluation was based largely on the

27     claimant's self- reporting. AR 36. This reason, in and of itself, is enough to uphold the ALJ's

28

decision.[1]  Dr. Kalman's opinion was contradicted by Dr. Bilik's and Dr. Palmer's; consequently, the ALJ need only offer specific and legitimate reasons supported by substantial evidence to properly discount Dr. Kalman's opinion.  Dr. Kalman's evaluation consisted of quoted excerpts from his interview with the claimant along with a checklist that assesses her functioning in twenty work-related areas.  AR 729-38.  He performed no tests on Petrini and his evaluation contains almost no analysis or interpretation of Petrini's statements, just a repetition of her complaints.  *See id.*  Dr. Kalman's opinion is conclusory, brief, and unsupported by objective medical findings, which is a specific and legitimate reason for the ALJ to discount it.  *See Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1195 (9th Cir. 2004); *see also Gontes v. Astrue*, 913 F. Supp. 2d 913, 923 (C.D. Cal. 2012) ("[the treating physician's] two RFC forms were in check-box form, were conclusory, and conflicted with substantial other evidence in the record; the ALJ was entitled to reject them on that basis.").

In addition, the ALJ had serious concerns about the reliability of the statements that Dr. Kalman used for his opinions.  The ALJ found Petrini's "statements concerning the intensity, persistence, and limiting effects of these symptoms are not entirely credible," a finding Petrini does not contest.  AR 34.  It is reasonable for the ALJ to discount medical opinions based almost exclusively on less than credible statements.  *Tommasetti*, 533 F.3d at 1041 ("An ALJ may reject a treating physician's opinion if it is based 'to a large extent' on a claimant's self-reports that have been properly discounted as incredible.").

### III.  VOCATIONAL EXPERT

Plaintiff's last argument is that the ALJ posed an incomplete hypothetical to the vocational expert because she did not include all the limitations supported by the record.  Dkt. No. 16 at 22-23.  The ALJ's RFC determination was supported by substantial evidence in the record.  It follows that the ALJ's hypotheticals, which included the limitations from her RFC determination, were proper.  The ALJ was not required to rely on responses from the vocational expert to hypotheticals that included other limitations.  *See Rollins v. Massanari*, 261 F.3d 853, 858 (9th Cir. 2001)

---

[1] While the ALJ cited several other deficiencies in Dr. Kalman's report, this reason is the strongest and clearest, and no other reason cuts against her conclusions or findings.

8

("Because the ALJ included all of the limitations that he found to exist, and because his findings were supported by substantial evidence, the ALJ did not err in omitting the other limitations that [the plaintiff] had claimed, but had failed to prove.").

The vocational expert testified that a person with plaintiff's RFC as determined by the ALJ would be able to perform occupations such as a hand packager, with 400,000 positions nationally and 4,200 jobs in the Bay Area, a hospital cleaner with 800,000 jobs nationally and 5,000 in the Bay Area, or an office helper with 80,000 jobs nationally and 1,400 in the Bay Area. AR 37, 73-74. The ALJ was entitled to rely on the vocational expert's testimony in response to her hypotheticals. *See Bayliss v. Barhart*, 427 F.3d 1211, 1217–18 (9th Cir. 2005).

## CONCLUSION

The Court is sympathetic to Petrini's conditions and challenges. The ALJ's decision, however, is without legal error and falls within the bounds of substantial evidence. Consequently, plaintiff's motion is denied, defendant's is granted, and the case is closed.

**IT IS SO ORDERED.**

Dated: August 27, 2015

_____
JAMES DONATO
United States District Judge